

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-28-2008

# Atl Exposition Ser v. SMG

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4848

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Atl Exposition Ser v. SMG" (2008). *2008 Decisions.* Paper 1699.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1699

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4848
_____

ATLANTIC EXPOSITION SERVICES INC.;
HOWARD CASPER


v.

SMG, formerly known as SPECTACOR MANAGEMENT GROUP;
ROBERT MCCLINTOCK; SOUTH JERSEY REGIONAL COUNCIL
OF CARPENTERS, LOCAL 623

Howard Casper,
Appellant


_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No: 00-cv-3465)
District Judge: Joseph E. Irenas

_____


Submitted Under Third Circuit L.A.R. 34.1(a)
November 29, 2007

Before: BARRY, FUENTES, <u>Circuit Judges</u>, and DIAMOND,[*] <u>District Judge</u>.

(Opinion Filed:   January 28, 2008)

_____

[*] Honorable Paul S Diamond, District Judge for the United States District Court of the Eastern District of Pennsylvania, sitting by designation.

_____

OPINION OF THE COURT
_____

FUENTES, <u>Circuit Judge</u>.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Appellant, Atlantic Exposition Services, Inc. ("Atlantic Exposition"),[1] is a trade show contractor located in Atlantic City, New Jersey, which sets up and takes down trade shows mainly at the Atlantic City Convention Center (the "Convention Center") and Atlantic City casino hotels.

The Convention Center is among the thirty largest in the country. Show producers choose among the convention centers and other venues to house their trade shows. Once a show producer chooses a location, such as the Convention Center, it signs an agreement governing its use of the space. The show producer must obtain workers to construct and dismantle the exhibit booths. Atlantic Exposition is one of many show contractors that perform that service for show producers at the Convention Center.

Between 1983 and 1995, the Atlantic City Convention Center Authority (the "Authority") operated and managed the Convention Center. In 1983, the Authority and a union, South Jersey Regional Council of Carpenters, Local 623 ("Carpenters"), signed a

---

[1] On April 20, 2004, Atlantic Exposition withdrew its claim for injunctive relief and assigned its damage claim to its former principal, Howard Casper.

2

collective bargaining agreement for labor rates and terms at the Convention Center ("1983 Agreement"). During the period when the 1983 Agreement was in effect, the Authority, and then SMG, which was hired to manage the Convention Center starting in 1995, directly employed Carpenters exclusively to do the trade show work in the Convention Center, and no work was subcontracted to other show contractors. Concluding that the 1983 Agreement excluded some shows due to the high labor costs which were passed on to show producers, SMG entered into an agreement with Carpenters in April 1996 ("1996 Agreement") to obtain more favorable rates. In the 1996 Agreement, Carpenters and SMG agreed that if SMG chose to subcontract the construction of exhibit booths, it could only subcontract to companies that sign a separate collective bargaining agreement with Carpenters. That separate collective bargaining agreement required show contractors to use Carpenters for all their trade show construction needs in seven Southern New Jersey counties ("Seven County Agreement"). Atlantic Exposition refused to sign the Seven County Agreement with Carpenters. Though Atlantic Exposition was able to work in the Convention Center, it had to contract for Carpenters' labor through SMG, and abide by the unfavorable terms of the 1983 Agreement.

At issue in the instant appeal is Atlantic Exposition's claim that the 1996 Agreement violates Section 1 of the Sherman Act, 15 U.S.C. § 1. The District Court held that Atlantic Exposition could not show that the Convention Center wielded sufficient market power to cause an antitrust injury, because it could not show that the Convention

3

Center alone was the relevant geographic market. Concluding that the relevant market was large trade show venues in the Northeast or possibly across the United States, the District Court granted summary judgment for the defendants. For the reasons discussed below, the decision of the District Court will be affirmed.[2]

II.     **DISCUSSION**

The Clayton Act permits private enforcement of the antitrust laws by "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a). Despite this broad language, the Supreme Court has noted that "the lower federal courts have been virtually unanimous in concluding that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 534 (1983) (internal quotations and citation omitted) ("AGC"). Accordingly, the Supreme Court has required courts, in order to determine if a plaintiff can bring an antitrust claim, to "evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." Id. at 535.

A "showing of antitrust injury is necessary, but not always sufficient, to establish standing . . ., because a party may have suffered antitrust injury but may not be a proper

---

[2] The District Court had federal subject matter jurisdiction over this case under 28 U.S.C. § 1337(a) and 15 U.S.C. § 4. The District Court granted the defendants' summary judgment motion. The District Court's decision was final as to all parties and claims. Therefore, we have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

4

plaintiff . . . for other reasons." Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 110, n.5 (1986). In order to show an antitrust injury the "plaintiff must prove that it suffered an injury that (1) is of the type the antitrust laws were intended to prevent and (2) flows from that which makes defendants' acts unlawful." Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 349 (1990) (internal quotations and citation omitted).

Considering this issue *de novo*, we consider whether the injury that Atlantic Exposition alleges is of the type that antitrust laws were intended to prevent. Id. Atlantic Exposition claims that it satisfies this requirement because Atlantic Exposition lost profits "from having to pay the higher rates of the Carpenters compared to the lower rates of [Atlantic Exposition's preferred union]." (Atlantic Exposition Reply Br. at 8.) The purpose of antitrust laws is to protect competition, not competitors. Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 127 S.Ct. 2705, 2724 (2007). Thus, Atlantic Exposition's reference to its lost profits alone does not show antitrust injury. We must consider competition from "the viewpoint of the consumer," looking at "the prices, quantity or quality of goods or services" in the relevant geographic market for a product to determine if there has been an injury to competition. Mathews v. Lancaster Gen. Hosp., 87 F.3d 624, 641 (3d Cir. 1996) (internal quotations and citation omitted). If Atlantic Exposition could show that the Convention Center was in its own geographic market and able to raise prices or decrease the quality of the services it provided after entering into the 1996 Agreement, this would show that the injury was "of the type the antitrust laws were intended to prevent." Atlantic Richfield Co., 495 U.S. at 349.

5

Accordingly, we first consider whether the Convention Center was its own geographic market. "The relevant geographic market is the area in which a potential buyer may rationally look for the goods or services he or she seeks; boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand." Pa. Dental Ass'n v. Med. Svc. Ass'n of Pa., 745 F.2d 248, 260 (3d Cir. 1984) (internal citations omitted). "Interchangeability implies that one product is roughly equivalent to another for the use to which it is put." Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 437 (3d Cir. 1997) (internal quotations and citation omitted).

The District Court considered the geographic market from the perspective of the show producers. Atlantic Exposition argues that this was error, that the District Court should have considered the geographic market from the perspective of local show contractors, once the show producers had selected the Convention Center. If the District Court was correct to consider the geographic market from the perspective of the show producers, the finding that the Convention Center cannot be its own market is certainly correct. Atlantic Exposition does not dispute that show producers have roughly equivalent alternatives to the Convention Center in Philadelphia, Atlantic City and elsewhere on the East Coast.

The Department of Justice's merger guidelines provide guidance on whether it is appropriate to define a market from the perspective of the show contractors. In the merger guidelines, the Department of Justice defines a geographic market as "a region

such that a hypothetical monopolist that was the only present or future producer of the relevant product at locations in that region would profitably impose at least a 'small but significant and nontransitory' increase in price, holding constant the terms of sale for all products produced elsewhere." U.S. Department of Justice and the Federal Trade Commission, Horizontal Merger Guidelines, § 1.21 (1997). Applying this definition, as long as the show producers have options other than the Convention Center, SMG will be unable to profitably impose a price increase and, therefore, cannot be its own geographic market. In addition, the Second Circuit has held that a "geographic market encompasses the geographic area . . . in which the antitrust defendants face competition." Heerwagen v. Clear Channel Commc'ns, 435 F.3d 219, 228 (2d Cir. 2006) (internal quotations and citation omitted). It is undisputed that the Convention Center competes to attract trade shows with other convention centers. This view also supports the District Court's determination that the Convention Center was not its own geographic market.

Accordingly, we affirm the District Court's determination that the Convention Center is not its own geographic market. Therefore, Atlantic Exposition will be unable to show an antitrust injury and, accordingly, does not have standing to pursue this claim.

III. **Conclusion**

For the reasons stated above and in the District Court's written opinion, we will affirm the decision of the District Court.